FILED
United States Court of Appeals
Tenth Circuit

October 1, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENCH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LUIS EDGAR MONTES-RAMOS,

Defendant - Appellant.

No. 07-2027
(D. N.M.)
(D.Ct. No. CR-06-1079 RB)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

Driving north from the border in the remote "bootheel" section of southwestern New Mexico, Luis Edgar Montes-Ramos was pulled over by a deputy sheriff because his temporary registration tag was not properly affixed to his vehicle or legible. While waiting for Montes-Ramos to produce his driver's license, the deputy noticed a blanket in the backseat, covering what appeared to be large items. He saw a five-inch circular section of burlap protruding from

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

underneath the blanket.  Based on his observation of burlap, his law enforcement experience, and the location of the stop (along a known drug smuggling route), the deputy suspected Montes-Ramos was trafficking marijuana.  To confirm his suspicion, he leaned his head into the open window very slightly and sniffed.  He smelled marijuana and arrested Montes-Ramos.  At the police station, 96 kilograms of marijuana were found in the vehicle.  Montes-Ramos appeals from a partial denial of his motion to suppress.  Even though the deputy's minimal intrusion into the vehicle to effectuate the sniff was reasonable under the circumstances, we are obliged to reverse.[1]

## I. BACKGROUND

The facts are not in dispute.  Around 11:00 a.m. on February 8, 2006, Montes-Ramos was driving northbound on New Mexico Highway 80, approximately forty miles north of the border and thirty miles south of Lordsburg, New Mexico.[2]  Hidalgo County Sheriff's Deputy Robert Rodriguez was in his patrol car on the shoulder of the southbound side of Highway 80, checking traffic by radar.  Rodriguez observed a gold sedan traveling northbound with no license plate; it had instead a piece of paper where the license plate is generally placed.  The paper was "flapping in the wind" and was not legible.  (R. Vol. III at 22.)

---

[1] We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Highway 80 runs northeast from the border town of Douglas, Arizona, through the sparsely populated "bootheel" section of southwestern New Mexico before intersecting Interstate 10.

Rodriguez pulled onto the highway, made a U-turn, and signaled for the driver of the gold sedan – Montes-Ramos – to pull over. When Montes-Ramos pulled over, Rodriguez approached the vehicle on the passenger side. At that point, Rodriguez realized the piece of paper appeared to be a valid Arizona temporary registration tag. However, instead of being affixed inside the back rear window, as normally required by New Mexico law, the tag was encased in a clear plastic envelope, only the top of which was attached to the car's license plate holder. The car's windows were neither tinted nor dirty, and the tag would have been clearly visible if affixed to the inside rear window.

Though he did not intend to issue a ticket, Rodriguez advised Montes-Ramos in Spanish that his tag was placed in the wrong location and asked him to produce his driver's license. While Montes-Ramos was looking for his license, Rodriguez observed some large items in the backseat, covered by a leopard-print blanket. A five-inch circular section of burlap was visible underneath the blanket. At the hearing on Montes-Ramos' motion to suppress, Deputy Rodriguez testified "[w]hat [he] observed was consistent with the transportation of illegal contraband into the United States." (*Id.* at 14.) He explained drugs are often bundled into tight bricks and wrapped with burlap cloth. When asked whether the bundles he observed "appear[ed] consistent with burlap packaging of produce like onions or chile," he answered: "No." (*Id.* at 47.) He testified that during his almost seventeen years in law enforcement, he had been involved in approximately "one

-3-

dozen" drug-related investigations, of which "[a]pproximately two" involved the seizure of marijuana packaged in burlap.[3]  (*Id.* at 15.)

To confirm his suspicion that Montes-Ramos was transporting marijuana, Deputy Rodriguez "placed [his] nose – [his] face inside the [front passenger-side] door approximately two inches."  (*Id.* at 16.)  The sole purpose of the sniff was to determine whether there was marijuana in the backseat.  After leaning into the car, Rodriguez detected a strong odor of marijuana.  He drew his pistol, ordered Montes-Ramos out of the vehicle, handcuffed him, and placed him under arrest. Prior to being read his *Miranda*[4] rights, Montes-Ramos admitted he was transporting marijuana.  While waiting for backup to arrive, Rodriguez removed the blanket from the backseat, pierced one of the bundles, and observed a green leafy substance consistent with marijuana.  At the station, a complete search of the vehicle revealed five burlap bags containing 96 kilograms (approximately 211 pounds) of marijuana.

Montes-Ramos was indicted with possession with intent to distribute fifty kilograms and more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.  He moved to suppress the evidence found in the vehicle and the statements he made to the police.  The district court granted the motion as to

---

[3] It is unclear from the record whether the present stop was one of the two or in addition to the others.

[4] *Miranda v. Ariz.*, 384 U.S. 436 (1966).

the roadside statement because Montes-Ramos made it prior to being advised per the requirements of *Miranda*. The court denied the motion as to all other statements and evidence. It concluded the traffic stop was justified at its inception and was not unreasonably broad. The court considered the sniff to be a search, but held it did not violate the Fourth Amendment because it was supported by reasonable and articulable suspicion and officer safety. Montes-Ramos pled guilty to the indictment, reserving the right to appeal from the suppression decision. He was sentenced to 21 months imprisonment.[5]

## II. DISCUSSION

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review *de novo* the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Katoa*, 379 F.3d 1203, 1205 (10th Cir. 2004).

A. <u>The Stop</u>

The Fourth Amendment protects "[t]he right of the people to be secure in

---

[5] At oral argument, Montes-Ramos' counsel advised the Court that Montes-Ramos is no longer in custody. Because he is challenging the underlying conviction, not the sentence, Montes-Ramos' appeal is not moot. *See Fiswick v. United States*, 329 U.S. 211, 222 (1946) (holding the petitioner's challenge of his conviction is not rendered moot by the expiration of the underlying sentence because collateral consequences flowing from the conviction give the petitioner "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him").

their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "A routine traffic stop is a 'seizure' within the meaning of the Fourth Amendment . . . ." *United States v. Ramirez*, 479 F.3d 1229, 1243 (10th Cir. 2007) (citation omitted), *cert. denied*, 128 S. Ct. 1074 (2008). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).

The initial stop of Montes-Ramos' vehicle did not violate the Fourth Amendment because Rodriguez observed a violation of N.M. Stat. Ann. § 66-3-18(B), which provides:

> A . . . temporary registration permit shall be firmly affixed to the inside left rear window of the vehicle to which it is issued, unless such display presents a safety hazard or the . . . permit is not visible or readable from that position, in which case, the . . . permit shall be displayed in such a manner that it is clearly visible from the rear or left side of the vehicle.

Montes-Ramos was in violation of this statute because his temporary tag was not affixed to the inside left rear window, but was instead displayed outside the vehicle in such a manner that it *was not* clearly visible from the rear of the vehicle. "[A] vehicle's apparent failure to display some form of visible license plate/registration tag, temporary or permanent, gives rise to a reasonable

-6-

suspicion that its driver might be violating any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Edgerton*, 438 F.3d 1043, 1048 (10th Cir. 2006) (quotations omitted).

To be reasonable, a traffic stop must not only be "justified at its inception," the temporary detention associated with the stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Botero-Ospina*, 71 F.3d at 786 (quotations omitted). Montes-Ramos argues Deputy Rodriguez's actions violated this second prong, relying on *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994), and *Edgerton*. We see it differently.

In *McSwain*, a state trooper stopped the defendant's vehicle "for the sole purpose of ensuring the validity of the vehicle's temporary registration sticker." 29 F.3d at 561. As the trooper approached the vehicle on foot, he verified the sticker was valid and had not expired. *Id.* We held the trooper's decision to prolong the detention by questioning the defendant and requesting his license and registration "exceeded the scope of the stop's underlying justification" and therefore violated the Fourth Amendment. *Id.* In *Edgerton*, a state trooper stopped the defendant's vehicle because he could not read the temporary registration tag in the dark. 438 F.3d at 1045. Notably, "the tag was illegible not due to any material within Defendant's ability to control, but due to external conditions." *Id.* at 1050. We held "[o]nce [the trooper] was able to read the Colorado tag and deem it unremarkable, any suspicion that defendant had violated

-7-

[the Kansas statute relating to the display of license plates] dissipated . . . [and the trooper], as a matter of courtesy, should have explained to Defendant the reason for the initial stop and then allowed her to continue on her way without requiring her to produce her license and registration." *Id.* at 1051.

The troopers in *McSwain* and *Edgerton* had reasonable suspicion the vehicles they stopped were violating the traffic laws, but their suspicion evaporated when they determined no violations had in fact occurred. Here, by contrast, there was an actual traffic violation – Montes-Ramos' tag, though valid, was not displayed in accordance with New Mexico law. Thus, Rodriguez's demand for Montes-Ramos' license did not exceed the scope of the stop. This case is more analogous to *United States v. Concepcion-Ledesma*, 447 F.3d 1307 (10th Cir. 2006), and *United States v. DeGasso*, 369 F.3d 1139 (10th Cir. 2004). In *Concepcion-Ledesma*, we held it was reasonable for the trooper "to issue a written warning, verify [the defendant]'s license and registration information, and ask preliminary questions about travel plans" because the trooper saw the defendant's registration tag displayed in an unlawful manner, even after he approached the vehicle. 447 F.3d at 1314. Similarly, in *DeGasso*, we upheld a trooper's detention of the defendant because the trooper observed a continuing violation of state law after stopping the defendant's vehicle. 369 F.3d at 1141. We distinguished *McSwain* because "the violation was that the lettering on the license plate was not 'clearly visible,' which remained true even after the trooper

approached the truck and was able, at that point, to read it." *Id.* at 1149. As these cases make clear, an officer does not violate the Fourth Amendment by requesting a driver produce his license after being stopped for a traffic violation.

B. The Sniff

While Rodriguez was waiting for Montes-Ramos to produce his license, he observed suspect objects in the backseat and leaned his head approximately two inches into the car window and sniffed. Montes-Ramos contends the sniff was an unreasonable search; the government contends the sniff was not a search, but if it was a search, it was reasonable. We first consider whether the sniff was a search.

*1. Was It A Search?*

This Court has not previously considered whether an officer's intentional act of minimally intruding the air space of a lawfully stopped vehicle for an investigatory purpose constitutes a search within the meaning of the Fourth Amendment. It is not a simple question.

The protections of the Fourth Amendment apply to the interior of automobiles, at least to some extent. In *New York v. Class*, the Supreme Court held an officer conducted a search within the meaning of the Fourth Amendment when he opened a car door and reached into the interior of the vehicle to move papers obscuring the area of the dashboard where the vehicle identification number (VIN) is typically located. 475 U.S. 106, 108, 115 (1986). The Court explained: "While the interior of an automobile is not subject to the same

-9-

expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." *Id.* at 114-15. Similarly, in *United States v. Ryles*, the Fifth Circuit held a trooper's act of either opening the driver's side door or sticking his head inside an open window constituted a search because the officer "intruded a space that, under most circumstances, is protected by a legitimate expectation of privacy."[6] 988 F.2d 13, 15 (5th Cir. 1993); *see also United States v. Stone*, 866 F.2d 359, 363 (10th Cir. 1989) ("People have a reasonable expectation of privacy in the interiors of their automobiles . . . .").

In *Kyllo v. United States*, the Court remarked: "When the Fourth Amendment was adopted, as now, to 'search' meant to look over or through for the purpose of finding something; to explore; to examine by inspection . . . ." 533 U.S. 27, 32 n.1 (quotations omitted). Rodriguez's actions satisfy this definition – he leaned his head into Montes-Ramos' car to examine by inspection whether the car smelled of marijuana. The fact that the intrusion was minimal does not affect the analysis. In *Kyllo*, the Court explained: "[T]here is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor." 533 U.S. at 37; *see also Silverman v. United States*, 365 U.S. 505, 512 (1961) (refusing to uphold an

_____

[6] The Fifth Circuit went on to conclude the search did not violate the Fourth Amendment because it was reasonable. *Ryles*, 988 F.2d at 15-16.

-10-

"actual intrusion into a constitutionally protected area" despite the fact the intrusion was "by even a fraction of an inch").[7]  Over a century ago, Justice Bradley explained: "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure."  *Boyd v. United States*, 116 U.S. 616, 635 (1886).  If, as *Class* instructs, the interior airspace of the car is protected, then it must be protected from minimal intrusions as well as flagrant ones.

The only basis we can see for concluding Rodriguez's sniff was not a search is by analogy to cases involving canine sniffs.  In *Illinois v. Caballes*, the Court held a canine sniff of the exterior of a vehicle during a lawful traffic stop "does not rise to the level of a constitutionally cognizable infringement."  543 U.S. 405, 409 (2005).  The Court explained:

> The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car.  A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.

*Id.* at 410.  We are attracted by the reasoning in *Caballes*; but it is significant that

---

[7] We recognize *Kyllo* and *Silverman* involved intrusions into the home, which is subject to greater Fourth Amendment protection than an automobile.  *See Kyllo*, 533 U.S. at 31.  That said, we believe the principle that a minimal intrusion can violate the Fourth Amendment is not limited to intrusions into the home.

the dog sniff at issue there was conducted on the *exterior* of the car.  While it revealed information about the car's contents, the dog did not actually intrude into the car's protected space.[8]  Moreover, because a drug dog is trained to alert only to the presence of drugs, its "search" will only disclose information about the presence of certain contraband; it will reveal nothing about other (presumably innocent) smells. Though farfetched, Rodriguez's sniff could have revealed information about Montes-Ramos' private, lawful activities – the perfume of a recently departed passenger, a recently consumed lunch, a wet dog – as well as illegal activities – contraband or perhaps a decomposing body.

We conclude a police officer's intentional act of intruding a vehicle's air space, even if by only a few inches, constitutes a search within the meaning of the Fourth Amendment.  It would be different if Rodriguez had smelled marijuana

---

[8] We have found no Fourth Amendment violation where a dog "instinctive[ly]" jumped into an open hatchback and where "[t]here [was] no evidence . . . that the police asked [the defendant] to open the hatchback so the dog could jump in" and no "evidence the police handler encouraged the dog to jump in the car." *Stone*, 866 F.2d at 364; *see also United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009).  However, in *United States v. Winningham*, we distinguished *Stone* and suppressed contraband discovered in a vehicle following a canine sniff of the interior where the officers lacked reasonable suspicion that the car contained narcotics and opened the vehicle door through which the dog jumped.  140 F.3d 1328, 1330-31 (10th Cir. 1998).  "[T]he consensus among the courts that have addressed this question appears to be that a canine sniff that migrates from outside a car or other container to the interior does not constitute a violation of the Fourth Amendment, provided that the canine makes entry into the suspect vehicle of its own initiative and is neither encouraged into nor placed in the vehicle by a law enforcement officer." *United States v. Hutchinson*, 471 F. Supp. 2d 497, 506 (M.D. Pa. 2007).

-12-

*prior to* leaning into Montes-Ramos' vehicle. Under the plain view doctrine, "a law enforcement officer [may] seize evidence of a crime, without violating the Fourth Amendment, if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent . . . and (3) the officer had a lawful right of access to the object." *United States v. Angelos*, 433 F.3d 738, 748 (10th Cir. 2006) (quotations omitted). The plain view doctrine is equally applicable to plain smells, such that no search occurs if a police officer detects an odor of illegal drugs, alcohol, chemicals or the like from a location in which he is entitled to be. *See id.* at 748 ("The plain smell doctrine . . . is simply a logical extension of the plain view doctrine . . . .") (quotations omitted); *United States v. Merryman*, 630 F.2d 780, 784 (10th Cir. 1980) ("This Circuit has held that the smelling of marijuana by an experienced observer furnishes probable cause for the search."); *see also Kyllo*, 533 U.S. at 43-44 (Stevens, J., dissenting) ("[A]romas that are generated in a kitchen, or in a laboratory or opium den, enter the public domain if and when they leave a building."). But Rodriguez did not smell marijuana prior to leaning his head into Montes-Ramos' vehicle. Instead he was suspicious Montes-Ramos might be trafficking drugs and leaned his head in "[f]or assurance." (R. Vol. III at 16.)

### 2. *Was It Reasonable?*

Our conclusion that the sniff was a search does not end the analysis

because the Fourth Amendment commands only "that searches and seizures be reasonable."[9] *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). The Supreme Court has explained: "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. The permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* (quotations and citation omitted). If this were the Court's only instruction, we would be inclined to conclude the intrusion here was reasonable. It involved only a slight encroachment into an area that is subject to Fourth Amendment protection only to a limited degree. Montes-Ramos' vehicle was lawfully stopped at the time of the intrusion and he does not contend the intrusion prolonged the stop (the elapsed

---

[9] The fact the intrusion was for an investigatory purpose is not relevant to our analysis. "[T]he constitutional reasonableness of traffic stops [does not] depend[ ] on the actual motivations of the individual officers involved . . . . Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also Scott v. United States*, 436 U.S. 128, 138 (1978) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."). Thus, in *United States v. Villamonte-Marquez*, the Supreme Court rejected the argument that the customs officials' ulterior motive for an otherwise valid warrantless boarding of a vessel might strip the officials of their legal justification. 462 U.S. 579, 584 n.3 (1983). Similarly, in *United States v. Robinson*, the Court noted a traffic-violation arrest would not be rendered invalid by the fact it was "a mere pretext for a narcotics search" and a lawful post-arrest search of a person would not be rendered invalid by the fact it was not motivated by officer safety concerns. 414 U.S. 218, 221 n.1, 236 (1973).

-14-

time from stop to sniff was less than one minute). Nor does he (or could he) contest the importance and legitimacy of the government interest at stake here – preventing the transportation of illegal narcotics.

But the Supreme Court has also instructed that "warrantless searches are presumptively unconstitutional." *Kyllo*, 533 U.S. at 32. Searches conducted without a warrant are permissible, of course, under certain well-delineated exceptions to the warrant requirement. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions."). It is not the province of this Court to create a new (or expand an existing) exception to the warrant requirement. Instead, our task is limited to determining whether the government has met its burden of proving the search falls within a recognized exception. *See United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993) ("[T]he government has the burden of proving that an exception to the warrant requirement applies.").

The only apparent exception applicable here is the automobile exception, pursuant to which "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Calif. v. Acevedo*, 500 U.S. 565, 580 (1991). It is tempting to find probable cause for the sniff and affirm on the basis of our independent review of the record. A legitimate argument could be made that Rodriguez had probable

-15-

cause for his sniff search.[10] But, in spite of a clear opportunity, the government has never made that argument.

In his motion to suppress, Montes-Ramos contended the sniff was unlawful because it was conducted without his consent and without a warrant. In response, the government argued it had probable cause to search the vehicle based, in part, upon the odor of marijuana. But the odor of marijuana cannot factor into the probable cause analysis because Rodriguez did not smell marijuana until after he leaned his head into the vehicle.

At the suppression hearing, the judge was alert to this problem and repeatedly invited the government to focus its attention on whether the sniff was a permissible search. The government uniformly refused the court's invitation to address the critical issue and instead argued that Rodriguez had, prior to the sniff, acquired enough information "to proceed further with his investigation." (R. Vol. III at 54.) The court stated it was concerned with "how that odor comes to

---

[10] Rodriguez had knowledge of three facts and circumstances prior to his search of Montes-Ramos' vehicle which could have contributed to probable cause: (1) Montes-Ramos was stopped forty miles from the U.S./Mexico border while traveling north on a known drug trafficking route; (2) Rodriguez observed a five-inch circular section of burlap protruding from underneath a blanket in the backseat; the blanket appeared to be covering large objects which Rodriguez testified were consistent with contraband but not produce; and (3) Rodriguez had approximately seventeen years of experience as a law enforcement officer and had been involved in approximately twelve drug-related arrests or investigations, two of which involved marijuana being transported in burlap bags. These facts and circumstances could support a finding of probable cause though, contrary to the view of the dissent, that resolution is not beyond any doubt.

[Rodriguez]." (*Id.* at 55.) The government responded by citing cases holding a defendant's rights under the Fourth Amendment are not violated where an officer smells an odor from a location in which he has a right to be. In response, defense counsel argued:

> I think when you stick your nose in the car, that's a search . . . . If Patrolman Rodriguez walked up to the car and out of the passenger window he smelled marijuana . . . we wouldn't be having this conversation, because it would be an entirely different situation. And I think the cases that [the government] cites talk about situations in which the officer from a position that he was legally entitled to occupy, was able to discern some odor that he recognized as burned or raw marijuana.

(*Id.* at 59-60.) The government offered rebuttal argument relating to the stop but, again, did not address the operative issue – whether Rodriguez had probable cause for his intrusion into the vehicle to conduct his sniff search.

Ultimately, in spite of its persistent and pertinent questioning, the court abandoned its instincts and accepted the government's argument, concluding the sniff was permissible even in the absence of probable cause. It explained:

> The intrusion was minimal and was substantially outweighed by concerns for officer safety in light of the reasonable suspicion that Montes was engaged in smuggling a large quantity of marijuana. Deputy Rodriguez's actions were objectively reasonable under the totality of the circumstances and within the range of activities that a police officer may permissibly engage in when he has reasonable suspicion to believe that a vehicle contains narcotics.

(R. Vol. I, Doc. 16 at 9.) It went on to hold that after Rodriguez smelled the marijuana, "there was probable cause to arrest Montes and search the [vehicle]."

(*Id.*)

Even on appeal, the government does not squarely argue the sniff was supported by probable cause.[11] It says even if the sniff was a search, it did not violate the Fourth Amendment because it "'stemmed from some probable cause focusing suspicion on the individual affected by the search.'" (Appellee's Answer Br. at 19-20 (quoting *Class*, 475 U.S. at 117-18 (1986).)[12] It contends that, prior to leaning into Montes-Ramos' vehicle, Rodriguez directly observed a traffic violation and "observed evidence that led him to believe that Montes' car contained a load of narcotics." (*Id.* at 20.) The government states: "These observations provided a sufficient connection between Montes and the subsequent intrusion and support upholding the search." (*Id.*) We are not sure what the government means by "sufficient connection," but if it is less than probable

---

[11] The government also does not argue it had probable cause to search the car independent of the sniff.

[12] In *Class*, the Supreme Court held the officer's search of the defendant's vehicle to obtain the VIN did not violate the Fourth Amendment "[i]n light of the danger to the officers' safety that would have been presented by returning respondent immediately to his car . . . ." 475 U.S. at 116. The decision appears to rest, in part, upon the "important interests served by the VIN." *See id.* at 112. The Court explained: "[B]ecause of the important role played by the VIN in the pervasive governmental regulation of the automobile and the efforts by the Federal Government to ensure that the VIN is placed in plain view, we hold that there was no reasonable expectation of privacy in the VIN." *Id.* at 114. That unique consideration is not present here. While reasonable suspicion is sufficient to justify an investigatory stop, *see Botero-Ospina*, 71 F.3d at 787, it is not sufficient to justify a warrantless search. To the extent *Ryles*, 988 F.2d at 16, can be read to require only reasonable suspicion for a search of an automobile for narcotics, we decline to follow it.

-18-

cause, it is not sufficient.

If Rodriguez reasonably suspected Montes-Ramos was transporting illegal narcotics, he could have detained Montes-Ramos and investigated further. He could have asked if Montes-Ramos was transporting narcotics. *See United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007). He could have asked for consent to search the vehicle. *See United States v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996). He could have stood at the car door, waiting for the smell of marijuana to waft out the window. *See Angelos*, 433 F.3d at 748. He could have called for a drug dog to sniff the exterior of the vehicle. *See United States v. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990) (holding a canine sniff on a legitimately detained automobile is not a "search" within the meaning of the Fourth Amendment). And if his suspicion about drug trafficking caused him to fear for his safety, he could have removed Montes-Ramos from his vehicle,[13] *see Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977), or looked (perhaps even slightly intruded) into the vehicle to determine whether there were weapons within Montes-Ramos' reach, *see Michigan v. Long*, 463 U.S. 1032, 1050

---

[13] The government contends because Rodriguez could have removed Montes-Ramos from his vehicle without violating the Fourth Amendment, surely he could have taken the less intrusive action of leaning into Montes-Ramos' window to sniff for drugs. We disagree. The purpose of removing a driver from a vehicle is to ensure officer safety. *See Mimms*, 434 U.S. at 111. That purpose is not evident here therefore it does not matter that the sniff was a less intrusive alternative.

(1983).[14]  He could not, however, engage in a warrantless sniff search for drugs –

even a minimally intrusive one – unless he had probable cause to believe the

vehicle contained contraband or evidence of a crime.

Where, as here, a defendant makes a clear argument in support of a motion

to suppress and the government fails to respond to that argument, even when

expressly (and repeatedly) invited by the court to do so, the argument is waived.

*See United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006) ("[A] party

that has *forfeited* a right by failing to make a proper objection may obtain relief

for plain error; but a party that has *waived* a right is not entitled to appellate

relief."); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general

rule, of course, that a federal appellate court does not consider an issue not passed

upon below."); *Rosewood Servs., Inc., v. Sunflower Diversified Servs., Inc.*, 413

F.3d 1163, 1167 (10th Cir. 2005) (holding argument not asserted before district

court is waived on appeal).  This is especially true where the government does not

even argue the issue with clarity on appeal.[15]  *See Bronson v. Swensen*, 500 F.3d

---

[14] The district court noted in passing that "[c]oncerns for officer safety may justify a limited search of a vehicle," (R. Vol. I, Doc. 16 at 8), but there was no evidence or argument about officer safety.  To his credit Rodriguez did not, *post hoc*, claim his search was motivated, even partially, by a concern for his safety.

[15] Even if we could, charitably, construe the government's appellate brief as arguing the sniff was supported by probable cause, we see no "compelling reasons" to depart from our general waiver jurisprudence.  *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court.").  Nevertheless, "we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of

1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1202 n.2 (10th Cir. 2003) (where a party does not brief an issue on appeal, the argument is waived).

Accordingly, we **REVERSE** the district court's partial denial of Montes-Ramos' motion to suppress and **REMAND** for suppression of the fruits of the sniff search and such other necessary proceedings consistent with this Order and Judgment.

> **Entered by the Court:**
>
> **Terrence L. O'Brien**
> United States Circuit Judge

---

law, even grounds not relied upon by the district court." *Medina v. City & County of Denver*, 960 F.2d 1493, 1495 n.1 (10th Cir. 1992) (quotations omitted). Here, the probable cause issue could have been, but was not, decided by the district court because the government did not make its case. This circumstance does not justify a departure from our waiver bar, even if we could conceivably affirm for reasons not argued to, or decided by, the district court.

07-2027, <u>United States v. Montes-Ramos</u>

**BRISCOE**, J., dissenting:

Remarkably, in the face of an uncontroverted factual record that establishes Officer Rodriguez had probable cause to search Montes-Ramos' vehicle prior to "the sniff," the majority chooses to order suppression of the evidence found in the vehicle, and presumably thereby undo Montes-Ramos' conviction, because the government has purportedly "waived" any argument that probable cause existed. I strongly disagree with both the majority's analysis and its outcome.

I

Recently, in <u>United States v. Cruz-Rodriguez</u>, 570 F.3d 1179 (10th Cir. 2009), we distinguished between "waiver" and "forfeiture" in the context of a criminal case. "'Waiver,'" we noted, "is the intentional relinquishment or abandonment" of an issue, whereas "'forfeiture is the failure to make the timely assertion'" of an issue. <u>Id.</u> at 1183 (quoting <u>United States v. Olano</u>, 507 U.S. 725, 733 (1993) (internal quotation marks omitted)). "In other words," we held, "waiver is accomplished by intent, but forfeiture comes about through neglect." <u>Id.</u> (internal quotation marks omitted). In turn, we noted that these two concepts have a significant impact on "the availability of appellate review . . . ." <u>Id.</u> Issues that have been merely forfeited remain eligible for appellate review. <u>Id.</u> Issues that have been waived, however, are not subject to appellate review. <u>Id.</u>

Applying those principles here, the government's failure to sufficiently argue the issue of probable cause at the time of the suppression hearing could be

described as neglectful. But, reviewing the entire record, it cannot seriously be asserted that the government intentionally abandoned that issue. As a general matter, the government vigorously opposed Montes-Ramos' motion to suppress and argued that the evidence seized from his vehicle should be deemed admissible. After persuading the district court to uphold Officer Rodriguez's sniff search on safety grounds, there was no need for the government to argue probable cause as an alternative basis for the search. In this appellate forum, with the search again at issue, the government has properly seen fit to offer alternative rationales for the search, including probable cause. In particular, the government's appellate brief expressly asserts that "Officer Rodriguez' sniff 'stemmed from some probable cause focusing suspicion on the individual affected by the search.'" Aplee. Br. at 19-20 (quoting New York v. Class, 475 U.S. 106, 117-18 (1986)). In support of that argument, the government notes that "before Officer Rodriguez intruded into the car's airspace, he had . . . observed evidence that led him to believe that Montes' car contained a load of narcotics," and that "[t]hese observations provided a sufficient connection between Montes and the subsequent intrusion and support upholding the search." Id. at 20. Consequently, we are not, as the majority erroneously asserts, dealing with a waiver. Rather, we are, at most, dealing with a potential forfeiture of the probable cause argument due to the government's failure to assert it below.

"Although a litigant's failure to raise an argument before the district court

-2-

generally results in forfeiture on appeal, forfeiture is not jurisdictional." United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007). "Whether to address the argument despite the litigant's failure to raise it below is subject to this court's discretion based on the circumstances of the individual case." Id. "For example, the Supreme Court has indicated appellate courts might be justified in resolving an issue for the first time on appeal 'where the proper resolution is beyond any doubt or where injustice might otherwise result.'" Id. at 1201-02 (quoting Singleton v. Wulff, 428 U.S. 106, 121 (1976)). Consistent with Singleton's direction, this court has exercised its discretion to hear issues raised for the first time on appeal where "no additional findings of fact or presentation of evidence were required for the issue's disposition and both parties had the opportunity to address the issue in their appellate briefing." Id. at 1202.

A review of the record in this case establishes that it fits cleanly within the narrow exception identified in Jarvis. To begin with, the suppression proceedings below, which included Officer Rodriguez's descriptive testimony regarding the details of the stop, "resulted in a record of amply sufficient detail and depth from which the [probable cause] determination may be made." United States v. McSwain, 29 F.3d 558, 562 (10th Cir. 1994) (internal quotation marks omitted). Consequently, "no additional findings of fact or presentation of evidence [a]re

-3-

required for . . . disposition" of the probable cause issue.[1] Jarvis, 499 F.3d at 1202; see Crescent City Live-Stock Landing & Slaughter-House Co. v. Butchers' Union Slaughter-House & Live-Stock Landing Co., 120 U.S. 141, 149 (1887) ("[W]hen there is no dispute of fact, the question of probable cause is a question of law . . . ."). Further, as noted, the government has argued the issue of probable cause in its appellate brief, and Montes-Ramos has responded directly to that argument. Aplt. Reply Br. at 5-7 (arguing that Class, the Supreme Court case cited by the government, is distinguishable from the instant case). Thus, "both parties [have] had the opportunity to address the issue [of probable cause] in their appellate briefing." Jarvis, 499 F.3d at 1202.

The public's long-recognized interest in the "conviction of guilty criminals," United States v. Murphy, 41 U.S. 203, 211 (1842), also, I believe, weighs in favor of reaching the issue of probable cause. As the majority opinion makes clear, Officer Rodriguez's sniff search of Montes-Ramos' vehicle can only be justified, and in turn the evidence seized from that vehicle can only be deemed admissible, if there was probable cause for the search. In other words, absent our consideration of the probable cause issue, the evidence will be suppressed and, in turn, Montes-Ramos' otherwise valid conviction will be set aside. Thus, I believe

---

[1] This is also consistent with our well established rule that we may "affirm a district court on a previously unexplored ground," so long as there is a record sufficient to permit any necessary conclusions of law. United States v. Pursley, 577 F.3d 1204, — (10th Cir. 2009) (specific page numbers not yet available via Westlaw).

-4-

the interests of justice compel us to exercise our discretion and resolve the probable cause issue.

## II

Probable cause to search an automobile exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996) (citations omitted); see also United States v. Concepcion-Ledesma, 447 F.3d 1307, 1316 (10th Cir. 2006) (examining whether "the facts observed by the law enforcement officers indicate a fair probability that the vehicle contains contraband or evidence"). We view the facts "from the standpoint of an objectively reasonable police officer." Ornelas, 517 U.S. at 696. "[W]e must look at the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." Concepcion-Ledesma, 447 F.3d at 1316 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)) (internal quotation marks omitted).

According to the record on appeal, Officer Rodriguez observed a blanket covering large bundles in the back seat, with burlap visible where a bundle was not covered by the blanket. Rodriguez testified that one method of shipping marijuana is to pack it into bricks wrapped with burlap cloth. Based on Rodriguez' experience with the transportation of controlled substances, which included two drug busts that involved the use of burlap to transport contraband,

-5-

Rodriguez determined that the visual appearance of the bundles was consistent with the packaging of contraband and not with the packaging of legal agricultural products. Id. at 14-16, 47-48.[2]

Additional facts known to Rodriguez, in combination with his observation of packaging consistent with contraband, in my view established a fair probability that the vehicle contained contraband. See Sparks, 291 F.3d at 691 (concluding that officer's recognition of 2 x 2 inch bags in the front seat of a vehicle "as being the 'size and type used to distribute drugs,'" combined with other facts known to the officer at the time, established probable cause to search the vehicle). Montes-Ramos was driving along Highway 80, "a known drug-smuggling route." Dist. Ct. Mem. Op. at 1. Montes-Ramos' temporary registration permit had been placed on the vehicle in violation of state law and in such a manner as to be virtually unreadable while the vehicle was in motion. The burlap bundles in the

---

[2] Although Rodriguez did not explain more fully why he thought the packaging conformed to the smuggling of marijuana and not to the shipment of legal products, it is well-established that "a police officer may draw inferences based on his own experience in deciding whether probable cause exists." Ornelas, 517 U.S. at 700 (citing United States v. Ortiz, 422 U.S. 891, 897 (1975)). As a reviewing court, we must "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." Santos, 403 F.3d at 1124 (citations and internal quotation marks omitted). As the district court generally accepted Rodriguez' testimony and specifically accepted his observation that the packaging indicated contraband, see generally Dist. Ct. Mem. Op. at 3, 7, we must give "due weight" to the district court's findings and accept Rodriguez' testimony, even though it was rather conclusory, Ornelas, 517 U.S. at 700 ("An appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable.").

back seat of Montes-Ramos' car were covered almost entirely with a blanket. That one would attempt to conceal the bundles from view is more consistent with an attempt to conceal contraband than with the transport of lawful agricultural products. Finally, Montes-Ramos was northbound and traveling away from the Mexican border, which is consistent with Rodriguez' suspicion that Montes-Ramos was smuggling drugs into the country. Cf. United States v. Valenzuela, 365 F.3d 892, 901 (10th Cir. 2004) (rejecting the government's contention that mere proximity to the border, by itself, would constitute probable cause, without ruling out proximity to the border as a factor in the probable cause analysis).

For the foregoing reasons, I respectfully DISSENT and would affirm both the district court's denial of Montes-Ramos' motion to suppress and the judgment of conviction.