BOOMGAARDEN, Justice.
*223 [¶1] A jury convicted Eric Richard Dixon of felony possession of marijuana and possession with intent to deliver. Mr. Dixon challenges his convictions by claiming the district court erred when it denied his motion to suppress evidence obtained during a search of his vehicle following a traffic stop, and when it admitted the State's rebuttal evidence concerning Colorado's medical marijuana law. Mr. Dixon also raises claims of prosecutorial misconduct and ineffective assistance of defense counsel. Finding no reversible error, we affirm.
ISSUES
[¶2] Mr. Dixon raises four issues:
I. [D]id the district court err in denying Mr. Dixon's motion to suppress?
II. Did the district court erroneously permit the introduction of improper rebuttal evidence?
III. Did the prosecutor commit prejudicial misconduct through the use of improper evidence and argument?
IV. Did defense counsel provide ineffective assistance by failing to object to the admission of improper evidence?
FACTS
[¶3] On May 20, 2017, the Wyoming Highway Patrol received a complaint of a light blue minivan with a dangling front Colorado license plate, unlawfully passing vehicles near Rawlins, Wyoming, at a high rate of speed, and nearly hitting two cars. Trooper Jason Jurca located a vehicle driven by Mr. Dixon that matched the description. After Trooper Jurca observed Mr. Dixon commit further infractions, he initiated a traffic stop and approached the vehicle on the passenger side. He requested Mr. Dixon's driver's license, registration, and proof of insurance, and commented about the vehicle's condition, including its cracked windshield and the hanging front plate. Mr. Dixon responded that his wife was in an accident and hit a curb. When asked about his travel plans, Mr. Dixon stated he was headed to Jackson Hole to visit a friend for the weekend. Trooper Jurca returned to his patrol vehicle after he confirmed the rear and front license plates matched.
[¶4] Trooper Jurca processed Mr. Dixon's information and prepared a written warning for the loose license plate and cracked windshield. He re-approached Mr. Dixon's vehicle and explained the reasons for the written warning. As he handed Mr. Dixon the documents through the passenger window, Trooper Jurca "smelled the very distinct odor of marijuana." He told Mr. Dixon to "wait" and instructed him to roll up his driver's side window, after which Trooper Jurca leaned into the vehicle and smelled marijuana again. Trooper Jurca also picked up "a little green bud of marijuana" on the passenger seat and asked Mr. Dixon if he had drugs in the vehicle. Mr. Dixon initially denied having drugs, but later said he thought his wife might have her "stash" in the vehicle.
[¶5] Trooper Jurca placed Mr. Dixon in the patrol car, requested backup, and searched Mr. Dixon's vehicle for drugs. He discovered two small sandwich bags containing marijuana and several partially smoked marijuana joints in the console area. He also found marijuana concealed in the back of the minivan contained in five vacuum-sealed bags each weighing about one pound. Trooper Jurca placed Mr. Dixon under arrest and transported him to the Carbon County Detention Center. While at the jail, Mr. Dixon informed Trooper Jurca that he was delivering the drugs to someone at a gas station in Libby, Montana, in exchange for payment. He explained that this was his first time doing anything like that, but he needed the money because he was "doing poor financially" and in jeopardy of losing his home and business after a 500-year flood damaged his mining company in Chile. A detention deputy overheard Mr. Dixon's statements to Trooper Jurca about the planned drug transaction.
[¶6] The State charged Mr. Dixon with two felonies: possession of a controlled substance, and possession of a controlled substance with intent to deliver. Mr. Dixon pleaded not guilty to the charges. Prior to trial, he moved to suppress evidence, alleging the warrantless search of his vehicle violated both the state and federal constitutions because *224 Trooper Jurca unlawfully placed his head into the passenger window to conduct a sniff search without consent or probable cause. The district court denied the motion after an evidentiary hearing.
[¶7] A two-day jury trial commenced on November 14, 2017. The State called several witnesses in its case in chief including: Jeremy Williams, the person who reported Mr. Dixon's erratic driving; Deputy Terrill, the detention deputy who overheard Mr. Dixon's statements to Trooper Jurca; and Rachel Chavez, a forensic specialist with the Wyoming State Crime Lab. The State also called Trooper Jurca and, through his testimony, admitted video clips of the traffic stop and search. Defense counsel did not cross examine the State's witnesses and the State rested.
[¶8] The defense called Mr. Dixon as its sole witness. Unbeknownst to the State, Mr. Dixon's trial strategy required recanting his jailhouse admissions. At trial, he claimed the marijuana belonged to his wife and that he had no knowledge she had marijuana in the vehicle. Mr. Dixon first told the jury that he and his wife were separated, but she allowed him to borrow her minivan for his trip because his truck was in the shop. Although he noticed the minivan smelled like marijuana, it did not raise a "red flag" because medical marijuana is legal in Colorado where they reside. Mr. Dixon testified that his wife is a nurse and a medical marijuana caregiver, and often transports marijuana for her patients. He explained his understanding that Colorado law permits a caregiver to have up to five cancer patients and each patient may possess up to 16 ounces of marijuana.
[¶9] Mr. Dixon next testified that he did not know about the marijuana in the minivan. In addressing the video footage showing his demeanor during the search, Mr. Dixon acknowledged that he was nervous while Trooper Jurca searched the vehicle, but testified his demeanor was largely out of concern his dog would jump out and run into the interstate;[1] it was not due to concealed drugs. He further acknowledged he became nervous when Trooper Jurca started searching the large bag containing the marijuana, but only because he had never seen the bag before, he did not place the bag in the minivan, and he knew his wife transported bulk marijuana as a caregiver and smoked marijuana recreationally, too.
[¶10] Mr. Dixon then recanted his admission about the planned drug transaction. He testified he falsely told Trooper Jurca about knowingly transporting the marijuana to Montana because he thought if he "took the rap" for his wife and made sure her nursing license was "safe,"[2] it might "sweeten the deal" with her in their divorce proceedings pertaining to custody.
[¶11] Mr. Dixon's trial strategy caught the State by surprise. On cross-examination, the State worked to reinforce that Mr. Dixon knowingly possessed the marijuana despite his recanted admissions. The State played clips of the footage taken inside the patrol car, which shows Mr. Dixon becoming nervous, swearing, and putting his hands on his face each time Trooper Jurca neared the bag containing marijuana.[3] Mr. Dixon admitted he showed "signs of anxiety" and placed his hands over his eyes when Trooper Jurca neared the bag even though he could not see it, because he "knew there was going to be a lot of marijuana in that bag." The State also questioned Mr. Dixon's veracity and probed the weaknesses with his defense theory. Mr. *225 Dixon admitted he lied to Trooper Jurca when he denied driving erratically on the night of the traffic stop. He admitted he lied to Trooper Jurca about trafficking marijuana in order to protect his wife even though he knew he had the right to remain silent and no one suspected the five pounds of marijuana might belong to her. He admitted that he owns a mining company in Chile but made up the story about having financial problems in order to take attention away from his wife. Mr. Dixon admitted he lied on multiple occasions:
Q. ... You tell the truth and sometimes you lie; isn't that correct?
A. Yes.
Q. It's not just on one occasion, though, is it? You do it multiple times?
A. Yes.
[¶12] After being caught off guard by the defense's trial strategy, the State obtained a fifteen-minute break to prepare Trooper Jurca as its rebuttal witness. On rebuttal, Trooper Jurca explained his familiarity with marijuana trafficking. He opined that the marijuana found in Mr. Dixon's vehicle was more consistent with trafficking than with medicinal marijuana because it was double vacuum-packed, tied shut in a black trash bag, and concealed in a large bag, which is typically done by people trying to hide illegal substances. The State provided Trooper Jurca with State's Exhibit 13-a copy of the Colorado Constitution pertaining to medical marijuana. Trooper Jurca read portions of the exhibit to the jury. He summarized that Colorado law permits caregivers to have up to two ounces of usable marijuana and "six marijuana plants, with three or fewer being mature, flowering plants that are producing a usable form of marijuana[,]" and opined Mr. Dixon's testimony about the amount of marijuana a caregiver may legally possess was inconsistent with Colorado law. The district court admitted the exhibit into evidence at the conclusion of Trooper Jurca's testimony.
[¶13] On cross-examination, Trooper Jurca testified he had never purchased marijuana from a dispensary or grower and had never been a caregiver. He stated that he lived in Colorado for two years as a student but was never a law enforcement officer there. Concerning Colorado medical marijuana law, Trooper Jurca admitted he had no idea how many times the law may have been amended, whether State's Exhibit 13 was the current and entire law on the subject, or whether a doctor can permissibly prescribe more than the amounts described in the exhibit. The State did not call any further witnesses.
[¶14] The district court instructed the jury and the parties presented closing arguments. The jury found Mr. Dixon guilty on both charges. The district court merged the charges for sentencing purposes and sentenced Mr. Dixon to four to six years of imprisonment, with credit for 111 days of presentence confinement. Mr. Dixon timely appealed.
DISCUSSION
I. The District Court Properly Denied Mr. Dixon's Motion to Suppress
[¶15] Mr. Dixon filed a pre-trial motion to suppress evidence. He argued the warrantless search of the minivan was unreasonable and violated his rights under both the federal and state constitutions because Trooper Jurca continually leaned his head into the passenger window throughout the stop without consent or probable cause.
[¶16] At the suppression hearing, Trooper Jurca testified he "smelled the very distinct odor of marijuana" as the wind blew across his face while issuing a written warning to Mr. Dixon. He told Mr. Dixon to "wait" and instructed him to close his driver's side window, after which Trooper Jurca stuck his head into the vehicle and "smelled the odor of marijuana distinctly again." In its written order denying the suppression motion, the district court made the following findings:
(4) As Trooper [Jurca] is handing back Mr. Dixon's paperwork and warning, indicating the end of the stop, Trooper [Jurca] paused and smelled marijuana emanating from the vehicle.
(5) Trooper Jurca then directs Mr. Dixon to roll up [the] driver side window to confirm that the smell is coming from the vehicle.
*226 (6) Trooper Jurca leaned his head into [the] vehicle, and while leaned in to confirm the smell, [he] saw and retrieved the bud of marijuana on the passenger seat.
(7) Trooper Jurca has sufficient training and experience to recognize the smell of, and the physical appearance of marijuana.
(8) Trooper Jurca's presence at the vehicle included reaching inside to exchange paperwork with Mr. Dixon, including the return of license, paperwork, and to issue a warning was both reasonable and lawful.
The district court concluded that "Trooper Jurca possessed probable cause to believe that marijuana was present in Mr. Dixon's vehicle at the moment he smelled marijuana while returning [Mr. Dixon's] paperwork" and, thus, Trooper Jurca did not violate Mr. Dixon's federal or state constitutional rights. On appeal, Mr. Dixon contests the district court's findings and requests we reverse the district court's order.
[¶17] When reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous. Rodriguez v. State , 2018 WY 134, ¶ 15, 430 P.3d 766, 770 (Wyo. 2018) (citation omitted). We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to "assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." Kunselman v. State , 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008) (citations omitted). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." Feeney v. State , 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009) (citation omitted). "The ultimate question of whether the search or seizure was legally justified, however, is a question of law we review de novo." Rodriguez , ¶ 15, 430 P.3d at 770 (citation omitted).
A. No Independent State Constitutional Analysis
[¶18] Mr. Dixon argues that Trooper Jurca's actions were unreasonable under the "more protective" provisions of the Wyoming Constitution, but does not provide any analysis that the outcome under the state constitution would differ from the outcome under the federal constitution. Rather, Mr. Dixon asserts the outcome is the same under both constitutions and turns on whether Trooper Jurca's actions were reasonable. We therefore decline to separately consider whether the search of Mr. Dixon's vehicle violated Article 1 Section 4 of the Wyoming Constitution, and instead conduct our analysis under the Fourth Amendment of the United States Constitution. See, e.g. , Lovato v. State , 2012 WY 10, ¶ 8, 269 P.3d 426, 428-29 (Wyo. 2012) (citation omitted) (declining to consider whether a seizure violated the Wyoming Constitution where appellant failed to provide "proper argument and briefing"); see also Sheesley v. State , 2019 WY 32, ¶ 15, 437 P.3d 830, 837 (Wyo. 2019) (clarifying the standards for adequate argument and briefing on a state constitutional claim).
B. Fourth Amendment Analysis
[¶19] Mr. Dixon contends that Trooper Jurca lacked probable cause to conduct a sniff search in the interior of his vehicle near the conclusion of the traffic stop and, therefore, his conduct was unreasonable under the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const. amend. IV. Under the Fourth Amendment, a traffic stop is an investigatory detention that requires reasonable suspicion that a traffic violation has occurred. Allgier v. State , 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015) (citations omitted). We evaluate the reasonableness of an investigatory stop under the Fourth Amendment by using the two-part inquiry from Terry v. Ohio , 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) : "(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first instance." Kennison v. State , 2018 WY 46, ¶ 13, 417 P.3d 146, 150 (Wyo. 2018) (citation omitted). The second *227 prong of the Terry test requires that the investigative detention "be temporary, lasting no longer than necessary to effectuate the purpose of the stop," and that the scope of the detention "be carefully tailored to its underlying justification." Campbell v. State , 2004 WY 106, ¶ 12, 97 P.3d 781, 784 (Wyo. 2004) (citation omitted). Absent the driver's consent, reasonable suspicion, or probable cause, the driver and his vehicle may only be detained for the period of time reasonably necessary to complete routine matters. Id. at 785 (citations omitted). Mr. Dixon does not challenge the justification for the initial stop; rather, he contends his continued detention was unreasonable because Trooper Jurca lacked probable cause to conduct a warrantless search of his vehicle.
[¶20] Warrantless searches are presumptively unreasonable. Allgier , ¶ 25, 358 P.3d at 1279 (citation omitted). The presumption may be overcome if probable cause justifies the search. Id. (citations omitted). Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Shaw v. State , 2009 WY 18, ¶ 20, 201 P.3d 1108, 1112 (Wyo. 2009) (citation omitted). We determine the presence of probable cause by using "an objective test, taking into account the totality of the circumstances, rather than by analyzing the subjective thought process of the officer." Id. (citations omitted). Although the test is objective, we consider the officer's training, experience, and expertise as part of the totality of the circumstances. Id. (citations omitted).
[¶21] The parties dispute whether Trooper Jurca had probable cause to conduct a sniff search inside of the minivan. The State contends Trooper Jurca acquired probable cause when he smelled marijuana from outside the vehicle, and that his instruction for Mr. Dixon to "wait" evidences that he detected marijuana coming from the vehicle at that time. In contrast, Mr. Dixon contends that Trooper Jurca did not definitively smell marijuana until he unlawfully manipulated the conditions by instructing Mr. Dixon to roll up his window, and then leaned into the vehicle for a sniff search. Essentially, he argues that Trooper Jurca's conduct violated the plain smell doctrine.
[¶22] The plain smell doctrine is an extension of the plain view doctrine, under which
a law enforcement officer [may] seize evidence of a crime, without violating the Fourth Amendment, if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent ... and (3) the officer had a lawful right of access to the object.
United States v. Montes-Ramos , 347 Fed.Appx. 383, 390 (10th Cir. 2009) (citation and internal quotation marks omitted). Extending these principles to "plain smells," "no search occurs if a police officer detects an odor of illegal drugs, alcohol, chemicals or the like from a location in which he is entitled to be." Id. (citations omitted). However, "a police officer's intentional act of intruding a vehicle's air space, even if by only a few inches, constitutes a search within the meaning of the Fourth Amendment." Id. at 389-90. Thus, resolution of this issue hinges on whether Trooper Jurca detected the odor of marijuana before he leaned into the vehicle.
[¶23] The district court generally found Trooper Jurca's testimony credible and supportive of a finding that he initially smelled marijuana before he crossed the threshold of the door. Specifically, the district court determined that Trooper Jurca smelled marijuana emanating from the vehicle while handing Mr. Dixon paperwork. Mr. Dixon argues these findings are inconsistent with Trooper Jurca's actions depicted in the traffic stop video. He claims the video shows that, as Trooper Jurca explained the written warning, he leaned further inside the passenger window, ordered Mr. Dixon to close the driver's side window and "said something to the effect that [I] 'thought I caught a whiff here, hold on,' and stuck his head and upper body fully into the open window." Mr. Dixon argues that when Trooper Jurca's suppression hearing testimony and the video are considered together, "at best, [Trooper Jurca] smelled the odor of marijuana on the wind" and was uncertain where the odor originated.
*228 [¶24] As stated above, we must uphold the district court's findings unless we conclude they are clearly erroneous. Kunselman , ¶ 9, 188 P.3d at 569. "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." King v. State , 2017 WY 129, ¶ 9, 403 P.3d 1070, 1073 (Wyo. 2017) (citation omitted). Although the video evidence is less than conclusive, our review of the record as a whole does not convince us that the district court made a mistake in its findings.
[¶25] Trooper Jurca unequivocally testified that he smelled marijuana before he crossed the threshold of the passenger door. The video provides a limited view of the passenger side of the vehicle, making it difficult to tell where Trooper Jurca's head was when he first smelled marijuana. The footage does not patently contradict Trooper Jurca's testimony and the district court's findings, as Mr. Dixon suggests. Instead, the video shows that, as Trooper Jurca was lawfully issuing Mr. Dixon a warning through the passenger window, Trooper Jurca stood at the passenger door, appeared to react to something (as evidenced by his body movements), and told Mr. Dixon to "wait." The video also shows Trooper Jurca's body position markedly changed between the time he testified he initially smelled marijuana to when he admitted he crossed the threshold of the passenger door and smelled marijuana again. With respect to the latter, Trooper Jurca's upper body clearly is extended forward and he is on his tip toes. Given Trooper Jurca's body position when he initially smelled marijuana, the marijuana odor undoubtedly came from the vehicle. On this record, we will not overturn the district court's findings (4) through (8), see supra ¶ 16, and we agree with the district court that the initial smell of marijuana provided probable cause for Trooper Jurca's sniff search, as well as the vehicle search. See Ray v. State , 2018 WY 146, ¶ 22, 432 P.3d 872, 878-79 (Wyo. 2018)and cases cited therein ; Dimino v. State , 2012 WY 131, ¶¶ 18-19, 286 P.3d 739, 744 (Wyo. 2012) (explaining that the odor of marijuana satisfies the more stringent "probable cause" test and was sufficient to justify detaining the defendant). The district court properly denied Mr. Dixon's motion to suppress.
II. No Reversible Evidentiary Error
[¶26] Mr. Dixon contends that Trooper Jurca provided improper lay or expert opinion testimony because he lacked any personal knowledge or professional expertise on Colorado medical marijuana law. The district court initially sustained Mr. Dixon's foundation objection to the admission of State's Exhibit 13, a purported excerpt from the Colorado Constitution. The State further questioned Trooper Jurca on State's Exhibit 13 but did not provide foundation. The district court then admitted State's Exhibit 13 without further objection. Mr. Dixon asserts the district court plainly erred when it allowed Trooper Jurca's rebuttal testimony on Colorado medical marijuana law and admitted State's Exhibit 13 without sufficient foundation.[4]
[¶27] "Under the plain error standard of review, we reverse a district court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." Garriott v. State , 2018 WY 4, ¶ 21, 408 P.3d 771, 780 (Wyo. 2018) (citation omitted). Plain error is established when: "(1) the record clearly reflects the alleged error; (2) the party claiming the error demonstrates a violation of a clear and unequivocal rule of law; and (3) the party proves that the violation adversely affected a substantial right resulting in material prejudice." Id. (citation omitted). We review the entire record to determine if Mr. Dixon was prejudiced. Hathaway v. State , 2017 WY 92, ¶ 33, 399 P.3d 625, 634 (Wyo. 2017) (citations omitted). Reversal is not warranted unless a reasonable probability exists that, absent the error, the result would have been more favorable to Mr. Dixon.
*229 Larkins v. State , 2018 WY 122, ¶ 94, 429 P.3d 28, 50 (Wyo. 2018).
[¶28] The State concedes that the first prong of the plain error test is met. However, the State contends that the district court did not transgress a clear and unequivocal evidentiary rule when it admitted the challenged rebuttal evidence because Trooper Jurca had personal knowledge of the content of State's Exhibit 13 and he did not provide a specialized opinion about Colorado law. We disagree.
[¶29] State's Exhibit 13 and Trooper Jurca's related testimony were admitted as evidence for the jury to consider; the parties therefore briefed this issue as a question of that evidence's admissibility under the Wyoming Rules of Evidence. The parties failed, however, to address the more fundamental problem. If Colorado law was material, determining the law of that state was a legal ruling for the court to make, not the jury. W.R.Cr.P. 26.1 ; see also Uniform Judicial Notice of Foreign Law Act, Wyo. Stat. Ann. §§ 1-12-302 to -306 (LexisNexis 2017). Under Rule 26.1, "[a] party who intends to raise an issue concerning the law of another state ... shall give reasonable written notice[,]" and the district court's determination on the law of another state is treated as a ruling on a question of law. W.R.Cr.P. 26.1. In making that determination, the court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Wyoming Rules of Evidence." Id. The court can then instruct the jury on the law as necessary. W.R.Cr.P. 30(a). Here, the State gave no notice of its intent to use Colorado medical marijuana law, the district court made no ruling, and the court did not instruct the jury on Colorado law. Instead, by admitting State's Exhibit 13 and Trooper Jurca's testimony, the State and the court left the jury to determine the veracity of the exhibit and the requirements of Colorado law.
[¶30] Had the State followed W.R.Cr.P. 26.1 and offered the exhibit and Trooper Jurca's testimony to advise the district court in determining Colorado medical marijuana law, admissibility under the Wyoming Rules of Evidence would be irrelevant. W.R.Cr.P. 26.1. Nevertheless, the State offered the exhibit and testimony as rebuttal evidence that had to comport with the Wyoming Rules of Evidence. It did not. Trooper Jurca clearly lacked personal knowledge of Colorado medical marijuana law and could not opine, based on his brief review and recitation of an excerpt from the Colorado Constitution, whether Mr. Dixon's statements were inconsistent with Colorado law. Accordingly, Trooper Jurca's rebuttal testimony was admitted in violation of W.R.E. 602 (he did not establish personal knowledge on a matter of law by reading an excerpt from the Colorado Constitution minutes before testifying),[5] and W.R.E. 701 (he provided no clarification of his prior testimony or assistance in the determination of a fact in issue; rather, he offered an uninformed opinion on a matter of law).
[¶31] The district court also erred by admitting State's Exhibit 13. The record offers no explanation why the district court declined to admit the exhibit when the State first offered it, but then reversed course after the State offered it again without providing further foundation. Trooper Jurca never identified State's Exhibit 13 and could not say whether it was, in fact, the current law in Colorado on medical marijuana, as required by W.R.E. 602 and 901 ; see also 3 Wharton's Criminal Evidence § 14:2 (15th ed. 2018) (explaining that authenticity is established when a witness with personal knowledge testifies that an exhibit accurately portrays what it depicts). Rather, Trooper Jurca testified that during the break he had read what was on the paper the prosecutor was holding, and then, on the State's request, he recited portions of the text contained in State's Exhibit 13.[6] The State did not otherwise *230 lay foundation for Exhibit 13 or demonstrate its relevance as required by W.R.E. 402.
[¶32] Though the State failed to comply with W.R.Cr.P. 26.1 and the district court erred by admitting Trooper Jurca's testimony and State's Exhibit 13, those errors did not materially prejudice Mr. Dixon. In assessing material prejudice, we may consider several factors including: "(1) whether the evidence furnished important corroboration of other testimony; (2) whether it related to a material, consequential fact; (3) whether counsel relied on the evidence in argument; (4) whether the evidence was cumulative; and (5) the effect of any instructions given to the jury." Hathaway , ¶ 33, 399 P.3d at 635 (citations omitted). Often, though, "the single most significant factor in weighing whether an error was [prejudicial] is the strength of the case against the defendant." Id. (citations and internal quotation marks omitted).
[¶33] Mr. Dixon concedes that the State's evidence regarding the Colorado Constitution was not used to corroborate other evidence and it did not relate to a material fact. The record makes clear that the State used Trooper Jurca's rebuttal testimony as an attack on Mr. Dixon's credibility, which was at issue all along.[7] Defense counsel mitigated possible prejudice when he effectively cross-examined Trooper Jurca about his lack of personal knowledge on Colorado law, and elicited Trooper Jurca's admissions that (1) he had never purchased marijuana from a dispensary or grower and had never been a caregiver, (2) he was never a law enforcement officer in Colorado, (3) he had no idea how many times the Colorado law may have been amended or whether State's Exhibit 13 was the current and entire law on the subject, and (4) he had no idea whether a doctor can prescribe more than the amounts described in State's Exhibit 13. Trooper Jurca also admitted that State's Exhibit 13 indicated that Colorado permits possession of more than two ounces of marijuana if medically necessary. The district court instructed the jury that it was the "sole judge of the credibility of the witnesses and of the weight to be given their testimony"; that in judging credibility, the jury could consider the witnesses' means of knowledge of the facts and their interest in the outcome of the trial, and that the jury was not required to accept an opinion expressed by a witness. These mitigating factors are important, as is the strength of the State's case.
[¶34] The State presented uncontroverted evidence that Trooper Jurca discovered over five pounds of marijuana in the back of Mr. Dixon's vehicle, which, based on his experience and training, was packaged consistent with drug trafficking and not medical or dispensary marijuana. The State also presented testimony from Trooper Jurca that Mr. Dixon admitted he knowingly possessed the marijuana and intended to deliver it to a gas station in Libby, Montana, in exchange for payment due to his financial problems. The detention deputy corroborated Trooper Jurca's testimony concerning Mr. Dixon's admission. And, Mr. Dixon testified he made those statements to Trooper Jurca, albeit falsely. In addition, the jury viewed the traffic stop video showing Mr. Dixon's emotional reaction, in the form of nervousness, swearing, and putting his hands on his face, as Trooper Jurca searched the back of the minivan and neared the large bag containing marijuana. The jury also heard Mr. Dixon's cross-examination testimony that he showed "signs of anxiety" and placed his hands over his eyes when Trooper Jurca neared the bag even though he could not see it, because he "knew that there was going to be a lot of marijuana in that bag." In light of the State's evidence, and reviewing the entire record, we conclude there is no reasonable probability the verdict would have been more favorable if the State's improper rebuttal evidence had been excluded.
III. No Reversible Prosecutorial Misconduct
[¶35] Mr. Dixon alleges he was denied a fair trial due to prosecutorial misconduct. He *231 contends the State committed misconduct by submitting improper rebuttal testimony and making improper statements during closing arguments. We address each contention in turn.
A. Improper Rebuttal Evidence
[¶36] Mr. Dixon asserts the State committed prosecutorial misconduct when it allowed Trooper Jurca to testify as a rebuttal witness regarding Colorado medical marijuana law without proper foundation. The State responds that Mr. Dixon's complaints relate to alleged evidentiary errors and do not rise to the level of prosecutorial misconduct. The State is correct.
[¶37] Prosecutorial misconduct is "[a] prosecutor's improper or illegal act (or failure to act), [especially] involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." Craft v. State , 2013 WY 41, ¶ 13, 298 P.3d 825, 829 (Wyo. 2013) (citation omitted); see also Black's Law Dictionary 1416 (10th ed. 2014). We necessarily distinguish prosecutorial misconduct from evidentiary error because otherwise, "any evidentiary error which favors the State would be considered prosecutorial misconduct." Craft , ¶ 13, 298 P.3d at 829. Mr. Dixon fails to make this distinction. Because his complaints about the State's rebuttal evidence amount to evidentiary (and W.R.Cr.P. 26.1 ) errors, which we fully addressed supra ¶¶ 29-34, we do not review those same complaints here.
B. Closing Argument Statements
[¶38] Mr. Dixon contends that during closing arguments the State inappropriately attacked Mr. Dixon's credibility, personally attacked defense counsel, vouched for the prosecutor's own credibility, and attempted to shift the burden of proof to the defense.
[¶39] Mr. Dixon did not object to several of the prosecutor's closing statements he now alleges were improper. We review those statements for plain error. Black v. State , 2017 WY 135, ¶ 13, 405 P.3d 1045, 1050 (Wyo. 2017) (citation omitted). "We are reluctant to find plain error in closing arguments 'lest the trial court becomes required to control argument because opposing counsel does not object.' " Trujillo v. State , 2002 WY 51, ¶ 4, 44 P.3d 22, 24 (Wyo. 2002) (citation omitted). Timely objection is the proper way to correct improper closing arguments, because it "allows the trial court to weigh the impact of the comments and assess curative measures." Dice v. State , 825 P.2d 379, 384 (Wyo. 1992).
[¶40] In those instances where defense counsel objected to the State's closing statements, we apply the harmless error standard. Black , ¶ 13, 405 P.3d at 1050. "To demonstrate harmful error, the defendant must show prejudice under circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play." Dysthe v. State , 2003 WY 20, ¶ 10, 63 P.3d 875, 881 (Wyo. 2003) (citation and internal quotation marks omitted). Under either the plain or harmless error standard, our review is focused on whether the error affected the accused's substantial right to a fair trial. McGinn v. State , 2015 WY 140, ¶ 13, 361 P.3d 295, 299 (Wyo. 2015) (citations omitted).
[¶41] Counsel are allowed wide latitude during closing arguments; a prosecutor may comment on all of the evidence and suggest reasonable inferences therefrom. Teniente v. State , 2007 WY 165, ¶ 30, 169 P.3d 512, 524 (Wyo. 2007). The prosecutor may not, however, inflame or mislead the jury, launch personal attacks against defense counsel, or express his personal beliefs or opinions about the evidence. Id. (citation omitted); Burton v. State , 2002 WY 71, ¶ 31, 46 P.3d 309, 317 (Wyo. 2002) (citation omitted). "We measure the propriety of closing arguments in the context of the entire argument and compare them with the evidence produced at trial." Doherty v. State , 2006 WY 39, ¶ 18, 131 P.3d 963, 969 (Wyo. 2006) (citation omitted). We will not reverse a conviction unless there is a reasonable probability that, absent the error, the result would have been more favorable to the defendant. Teniente , ¶ 12, 169 P.3d at 521 (citation omitted). Mr. Dixon bears the burden of establishing prosecutorial misconduct. Condra v. State , 2004 WY 131, ¶ 5, 100 P.3d 386, 389 (Wyo. 2004).
*232 i. Closing statements reviewed for plain error
[¶42] Mr. Dixon identifies three instances of alleged prosecutorial misconduct requiring plain error review. Each statement Mr. Dixon asserts as improper is clearly set forth in the record, thus satisfying the first plain error criterion. Our focus, then, is on the second and third criteria where appropriate.
a. First instance
[¶43] In the first instance of alleged misconduct, Mr. Dixon argues that the prosecutor's characterization of Mr. Dixon as a self-professed expert on medical marijuana law and the prosecutor's comments that Mr. Dixon "never offered any statutory authority" for his conclusions, "because he is not interested in the facts," violated the rule against burden shifting. Mr. Dixon also argues that the prosecutor improperly attacked his credibility by pointing to the inconsistency between his testimony and State's Exhibit 13, which he claims implied he was required to be "right on Colorado law."
[¶44] A fundamental principle in our criminal law is that the burden of proof rests on the State and never shifts. See Lane v.State, 12 P.3d 1057, 1066 (Wyo. 2000) (citation omitted). A prosecutor may not suggest a defendant carries any burden of proof or otherwise suggest the defendant must present certain evidence. Collins v. State , 2015 WY 92, ¶ 16, 354 P.3d 55, 59 (Wyo. 2015) (citation omitted); Bland v. State , 803 P.2d 856, 862 (Wyo. 1990) (explaining that the prosecutor improperly commented that the defendant had the same right as the prosecution to subpoena a witness for trial). However, a prosecutor may comment on the lack of evidence to support the defense's theory and the contents of a defendant's statements if they are introduced. See , e.g. , Proffit v. State , 2008 WY 114, ¶ 31, 193 P.3d 228, 241 (Wyo. 2008) ; Carothers v. State , 2008 WY 58, ¶¶ 17-18, 185 P.3d 1, 12-13 (Wyo. 2008) (citation omitted); Belden v. State , 2003 WY 89, ¶ 48, 73 P.3d 1041, 1089 (Wyo. 2003).
[¶45] With respect to the challenged statements, the State argued, in relevant part:
When he got on the witness stand today, [Mr. Dixon] testified that he is somewhat of an expert in the area of medical marijuana . Do you remember that testimony? He talked about the amount of medical marijuana which you are allowed to possess. And remember he told you this under oath, that a patient can have up to 16 ounces. That amount of marijuana would be just fine for five patients.
He never offered any statutory authority for that. He didn't need to, because he is an expert in the area of medical marijuana. Remember that testimony. But compare that testimony to the actual law on medical marijuana. This is State's Exhibit number 13. It's Article XVIII, Section 14. It's entitled Medical Use of Marijuana for Persons Suffering from Debilitating Medical Conditions, and it is part of the Colorado Constitution.
....
But the defense seems to contend that this is medical marijuana for medical purposes. The testimony by Trooper Jurca is that medical marijuana isn't packaged in vacuum-sealed bags, kept in another garbage bag and placed in a bag that is used for transport, you know, a luggage bag. This is consistent with transportation of controlled substance for distribution. Do you remember that testimony?
Also, when you look at medical situations, and if that is medical marijuana, where is the prescription? Have you ever got a prescription that was just raw, without advice, without labeling, without barcodes? There was none on this. Because it's not for medical purposes; it's for distribution purposes.
This incident happened on May 20, 2017. Today it is mid-November, a lot of time for story modification. I think it's a reasonable comment on the evidence that what is clear in a person's mind is closer to the incident. At the time of the incident, he never talked about medical marijuana. He never seemed to be protecting his wife. You see that at the beginning of this when he tried to throw her to the wolves. It became that is her stash of marijuana.
*233 It's not a consistent story that makes sense when we talk about the statement of the defendant's, which he said is now a lie, that he was going to transfer the marijuana to Libby, Montana, and give it to a party who he wouldn't give the name of at this time and place.
A lot of time for contemplation, a lot of time to develop a story that a person believes will hold weight. First situation, the first time we see this, the defendant talks about medical marijuana. But he had plenty of time to look at the statutes to see if he was -- what he said was even close to correct. He did not do that because he is not interested in the facts. He's interested in making you believe something that is not true so that you will come back with a verdict not based on the truth, but based on his inconsistent statements, based on statements where he says he is not telling the truth.
He is charged with possession with intent to deliver. Not only in his own testimony said that is exactly what he is going to do, but also the condition of the evidence as Officer Jurca and the trooper that was assisting him found that evidence. That marijuana was not in possession for medical use; it was in possession for transportation.
You don't put medical marijuana in double-layered bags so that the smell won't permeate the area. You do it because you do not want to be detected. And that is what he was trying to do today. He wants to fabricate so you will believe something that is not based on the evidence.
We will go back to the first instruction. The statements, as we look at them in our jury packet, have to be corroborated by good and convincing evidence.
Take every statement that the defendant made. Other than his own testimony, where is it corroborated? There is no corroboration except in his next statement, which may or may not be true. He doesn't raise his hand when he's telling the truth. So we don't know if he's telling the truth or if it is an inconsistent statement.
He possessed marijuana, and he possessed it with the intent to deliver, and he should be convicted on both counts. Not because I say so, but because the evidence says so, because his statements at the scene say so, because in order -- you can look at what he has at stake. He has his very freedom at stake. He has time to make up a story, a story that is not consistent and is not verified in any way, shape or form. In fact, it's rebutted throughout.
(Emphasis added.) In context, the prosecutor's argument demonstrates reasonable commentary on the evidence and the reasonable inferences the jury could draw from that evidence. Teniente , ¶ 30, 169 P.3d at 524 ; Wilks v. State , 2002 WY 100, ¶ 30, 49 P.3d 975, 987 (Wyo. 2002) (citation omitted).
[¶46] Mr. Dixon testified about his understanding of Colorado medical marijuana law, recanted his prior admissions about the planned drug transaction, and provided his explanation about why he made up the story about the planned drug transaction. The prosecutor's challenged statements are fairly characterized as comments on Mr. Dixon's testimony. Highlighting the inconsistencies in Mr. Dixon's testimony and commenting on the lack of evidence to support the defense's theory does not shift the burden of proof. See , e.g. , Fortner v. State , 843 P.2d 1139, 1147 (Wyo. 1992) (citations omitted) ("Although the prosecution may not make reference to Appellant's failure to take the stand, it may make comments on the state of the evidence or the failure of the defense to introduce material evidence or to call logical witnesses."); Proffit , ¶ 31, 193 P.3d at 240-41 (citation omitted) (stating that "a prosecutor may point out that certain evidence is uncontroverted, or that there is no evidence on a certain point"). Similarly, the prosecutor's comments on Mr. Dixon's testimony and highlighting the inconsistency between that testimony and the State's rebuttal evidence do not constitute an improper attack on Mr. Dixon's credibility. See , e.g. , Duke v. State , 2004 WY 120, ¶ 104, 99 P.3d 928, 958 (Wyo. 2004) (citations omitted) (finding no prosecutorial misconduct where the prosecutor stated the defendant lied and pointed to the inconsistencies between the State's evidence and witnesses and the defendant's testimony). The prosecutor's reference to Mr. Dixon *234 as "somewhat of an expert" stemmed from Mr. Dixon's testimony that he was knowledgeable about Colorado medical marijuana law because "[i]t's in the papers every day." These challenged statements did not violate the clear and unequivocal rules governing prosecutorial conduct during closing argument.
b. Second instance
[¶47] Mr. Dixon next claims that the prosecutor improperly attacked defense counsel by falsely accusing him of calling the prosecutor an expert on Colorado medical marijuana law. Although "[a] prosecutor may not launch personal attacks against defense counsel to inflame the passions and prejudices of the jury[,]" the challenged remarks do not fall into that category. Lafond v. State , 2004 WY 51, ¶ 39, 89 P.3d 324, 336-37 (Wyo. 2004) (citation omitted). In his closing argument, defense counsel remarked that the "State of Wyoming seems to fancy themselves as experts on Colorado marijuana law." In response, the prosecutor paraphrased defense counsel's comment and then stated that "[i]t's [defense counsel] that says we think we are an expert on Colorado medical marijuana." The prosecutor's statement was neither a false accusation nor a personal attack on defense counsel. Thus, the State did not transgress a clear and unequivocal rule of law as Mr. Dixon asserts.
c. Third instance
[¶48] The final closing statement subject to plain error review involves Mr. Dixon's argument that the prosecutor improperly asserted his own credibility when he told the jury "[t]he State gave you the truth[,]" and stated he knew that the highest law in a state is its constitution and the Colorado Constitution clearly provided for possession of no more than two ounces.
[¶49] The rule is well-established that a prosecutor cannot assert his own credibility as a basis for convicting a defendant. Teniente , ¶ 30, 169 P.3d at 524.
[W]hen the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion; that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law.
Id. (quoting Condra v State , 2004 WY 131, ¶ 11, 100 P.3d 386, 390 (Wyo. 2004) ). The purpose of this rule is to avoid having the jury reach a verdict on any basis other than the evidence presented. The prosecutor's statements, read in isolation, arguably violate this rule. Read in context, however, it is evident the statements do not invade the province of the jury. They are part of an evaluative discussion of the evidence with an express recognition that the jury is the ultimate truth finder. See , e.g. , Sturgis v. State , 932 P.2d 199, 204 (Wyo. 1997) (citation omitted).
[¶50] In order to support his theory that the five pounds of marijuana found in the back of the minivan belonged to his wife for legal distribution, Mr. Dixon testified that he understood Colorado medical marijuana law permits cancer patients to possess up to 16 ounces of marijuana and that a caregiver can have up to five patients. The prosecutor used State's Exhibit 13, an excerpt of the Colorado Constitution pertaining to medical marijuana, to rebut Mr. Dixon's testimony and show his theory was implausible. During his initial closing argument, the prosecutor detailed several inconsistencies regarding Mr. Dixon's testimony, including that his testimony on Colorado medical marijuana law conflicted with State's Exhibit 13. Defense counsel, in turn, argued that the State provided untrustworthy information:
Now, before I lose track of this whole State's Exhibit 13, the State of Wyoming seems to fancy themselves as experts on Colorado marijuana law. But I want you to look at this. I want you to look at the second-to-the-last page. Paragraph 7, Not later than March 1, 1999, the governor *235 shall designate, by executive order, the state health agency as defined by paragraph blah, blah, blah. Obviously written by a lawyer. That's at least 18 years old. Now, there's no other date on this. And where is this date? How do we know that this is even good law? Well, you know, I can get a copy of the United States constitution that says slavery is still legal, women can't vote, and the president can serve more than two terms. Doesn't have any reflection on the reality that is today.
....
His soon-to-be-ex-wife wasn't going to get in trouble for this stash of marijuana, her personal-use marijuana. What she was potentially going to get in trouble for was not violating state law with this 5 pounds, but by being a care provider as well as a nurse to these cancer patients and being in possession of 5 pounds. It wasn't that she was going to be in trouble with the law. His testimony was that her nursing license was going to be in jeopardy.
....
Was she guilty pursuant to Colorado law? I don't know. That is what Mr. Dixon thought, and that was his motivator. But certainly don't rely upon something that's 18 years old with no other identifying dates on it.
It was in rebuttal that the State reminded the jury the State first heard Mr. Dixon's medical marijuana theory at trial and, in that context, argued:
The State gave you the truth. That jury instruction says that you are the truth finder.
The defendant's case indicates that from the beginning to end, they are trying to hide the truth.
It's [defense counsel] that says we think we are an expert on Colorado medical marijuana.
....
If you look at the evidence, ladies and gentlemen of the jury, if this is medical marijuana, there should be some indication of that. There should be some prescription labeling. There should be something of that type of thing with this. That is not how it's packaged. It's packaged for distribution. That is how it's packaged.
As far as the laws in the state of Colorado, I'm not an expert on the state of Colorado, but I am just smart enough to know that the highest law in the state, in any state, is their constitution. The law that we have given you today is not a statutory law; it is a constitutional law when marijuana became legal. And that is the situation. It also gives guidelines for that so that, in a situation for using medical marijuana, you can use up to 2 ounces.
There is no -- I don't think it's no accident that it is 2 ounces. You don't see it over 3 ounces because that is felony amounts in Wyoming, a state bordering this.
This is a situation where we brought what we could get you, the highest law, the constitution of Colorado. It is very difficult to amend a constitution, and that's the law there.
(Emphasis added.) The prosecutor's argument, considered in context, shows that the prosecutor did not implore the jury to decide the case based on his word that "[t]he State gave you the truth." Rather, the prosecutor was evaluating the evidence regarding how the marijuana was packaged and the evidence the State presented to rebut the defense's medical marijuana theory. Because the prosecutor did not assert the State's credibility as a basis for convicting Mr. Dixon, no plain error occurred.
ii. Closing statements reviewed for harmless error
[¶51] At the beginning of his rebuttal closing argument, the prosecutor stated:
It's [defense counsel] that says we think we are an expert on Colorado medical marijuana. You heard the testimony here today that the first time we ever heard that this was going to be in any way, shape or form about medical marijuana was when he testified to it. It's not a situation where the defense wants to give a fair shake. It's not a situation where when they have six months to bring home the bacon, to bring home the laws -
*236 (Emphasis added.) Defense counsel objected, noting that the defense had "absolutely no burden to present anything to [the prosecutor] prior to trial"; the district court responded by cautioning the prosecutor to avoid burden shifting. As the prosecutor neared the end of his rebuttal argument he asked, rhetorically, "In this case, who gave you the truth?" Defense counsel again objected, arguing the question posed to the jury constituted improper vouching. The court sustained the objection and instructed the jury to disregard the statement. We evaluate these portions of the prosecutor's closing argument for harmless error.
[¶52] The prosecutor's "fair shake" and "bring home the bacon" comments, read in context, did not improperly shift the burden of proof to the defense. As discussed above, Mr. Dixon testified about his understanding of Colorado medical marijuana law, recanted his prior admissions about the planned drug transaction, and provided an explanation as to why he made up the story about the planned drug transaction. The prosecutor's closing argument, considered in its entirety, was directed to the implausibility of Mr. Dixon's theory and the rebuttal of Mr. Dixon's testimony. The district court's warning notwithstanding, and for the reasons discussed supra ¶¶ 44-45, the prosecutor's closing argument cannot fairly be characterized as shifting the burden of proof to Mr. Dixon or constituting conduct that otherwise affected Mr. Dixon's right to a fair trial. See , e.g. , Proffit , ¶¶ 31-32, 193 P.3d at 240-41 (citations omitted).
[¶53] Nor did the prosecutor's rhetorical question, "who gave you the truth?" constitute harmful error. Putting this statement in context, the prosecutor asked the jury to look at all of the evidence, especially Mr. Dixon's inconsistent stories, and then answer the question, "who gave you the truth?" To avoid any possibility the jury might interpret the prosecutor's rhetorical question as vouching for the State's evidence, the district court sustained Mr. Dixon's objection and instructed the jury to disregard the statement. We presume the jury followed the court's instruction thus mitigating any prejudice to Mr. Dixon. See , e.g. , Bruce v. State , 2015 WY 46, ¶ 75, 346 P.3d 909, 931 (Wyo. 2015) (citations omitted).
[¶54] Having found no plain or harmful error resulting from the prosecutor's conduct, we reject Mr. Dixon's cumulative error claim. See , e.g. , Lane , 12 P.3d at 1066 ; Harper v. State , 970 P.2d 400, 407 (Wyo. 1998).
IV. No Ineffective Assistance of Counsel
[¶55] In his final claim of error, Mr. Dixon alleges his trial counsel provided ineffective assistance when he failed to object to Trooper Jurca's rebuttal testimony on Colorado law, State's Exhibit 13, and the State's alleged improper statements during closing arguments.
[¶56] Ineffective assistance of counsel claims "involve mixed questions of law and fact and are reviewed de novo. " Castellanos v. State , 2016 WY 11, ¶ 95, 366 P.3d 1279, 1304 (Wyo. 2016) (citation omitted). To prevail on an ineffective assistance of counsel claim, Mr. Dixon must establish that: "(1) trial counsel rendered constitutionally deficient performance; and (2) because of that deficiency, a reasonable probability exists that the defendant would have enjoyed a more favorable verdict." Larkins , ¶ 62, 429 P.3d at 43 (citing Strickland v. Washington , 466 U.S. 668, 687, 695, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984) ). To show that trial counsel's performance was constitutionally deficient, Mr. Dixon must demonstrate that his attorney's performance was substantially below that of a reasonably competent attorney. Wall v. State , 2019 WY 2, ¶ 39, 432 P.3d 516, 527 (Wyo. 2019) (citation omitted). We evaluate his counsel's performance "under the circumstances existing at the time of the challenged act or omission and from the perspective available at the time of the challenged act or omission." Id. (citation omitted). As part of our evaluation, "we determine whether [counsel's] actions could be considered sound trial strategy." Luftig v. State , 2010 WY 43, ¶ 18, 228 P.3d 857, 865 (Wyo. 2010) (citation omitted). "We invoke a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." Brock v. State , 2012 WY 13, ¶ 10, 272 P.3d 933, 936 (Wyo. 2012) (citation omitted).
*237 "We are reluctant to reverse based upon allegations of ineffective assistance of counsel," and, in the usual case, "ineffective assistance of counsel is going to be demonstrable because of a cumulation of errors with a determination that, in the entire context of the trial, the defendant either was, or was not, denied a right to a fair trial." Id. (citations and internal quotation marks omitted).
[¶57] Defense counsel's trial strategy focused on attacking the "knowingly possessed" and "intent" elements of the crimes charged. Mr. Dixon acknowledges that pursuant to defense counsel's trial strategy, his counsel did not cross-examine the State's witnesses, but instead, challenged the State's case solely through Mr. Dixon's testimony. This strategy necessarily required the jury to believe that Mr. Dixon falsely told Trooper Jurca he intended to deliver and sell the drugs in Montana in order to avoid implicating his wife and jeopardizing her Colorado nursing license. Mr. Dixon therefore contends that his credibility was crucial to his defense, and that by failing to object to the improper rebuttal testimony and the prosecutor's closing arguments, defense counsel left Mr. Dixon's credibility open to attack.
[¶58] Though we agree that Mr. Dixon's credibility was crucial to his defense, we cannot say that defense counsel's failure to object to the State's rebuttal evidence or the prosecutor's evaluation of that evidence during closing arguments fell outside the wide range of professionally competent assistance. Defense counsel effectively cross-examined Trooper Jurca as to his lack of personal knowledge about Colorado medical marijuana law and thereby called Trooper Jurca's credibility into question. During closing arguments, defense counsel explained the State's rebuttal evidence was untrustworthy because State's Exhibit 13 was dated March 1, 1999, and there was no assurance it was still good law after 18 years. In this vein, defense counsel remarked to the jury: "I can get a copy of the United States constitution that says slavery is still legal, women can't vote, and the president can serve more than two terms. Doesn't have any reflection on the reality that is today." When viewed in context of the circumstances surrounding the admission of the State's rebuttal evidence, these efforts reflect sound trial strategy and an exercise of reasonable judgment. See Brock , ¶ 10, 272 P.3d at 936 ; Luftig , ¶ 18, 228 P.3d at 865.
[¶59] Mr. Dixon has failed to overcome the presumption that his counsel rendered constitutionally adequate assistance. Moreover, in light of the strength of the State's case, there is no reasonable probability that the result would have been more favorable to Mr. Dixon even if defense counsel had lodged successful objections to the State's rebuttal evidence and the State's closing argument. See supra ¶ 34.
[¶60] Affirmed.

When Trooper Chapman arrived, the officers removed Mr. Dixon's dog from the vehicle to safely conduct the search.

On direct examination, Mr. Dixon testified that it is a "gray area" whether a person can be both a nurse and a medical marijuana caregiver at the same time, and he believed his wife's dual role endangered her nursing license. The State objected to this testimony on hearsay grounds, and the district court sustained the objection. On cross-examination, Mr. Dixon testified, without further objection, that:
A. Her nursing license is separate from her ... caregiver. The caregiver is authorized by the State, and the nursing license is her medical authority to treat those cancer patients, not give them marijuana.
Q. So she's doing something illegal?
A. There was a gray area there, yes.

The camera system simultaneously records the exterior and interior, "cage portion" of the patrol car.

Mr. Dixon briefed this issue under our plain error standard of review and did not advocate for harmless error review.

See, e.g ., 3 Federal Evidence § 6:5 (4th ed. 2018) (explaining that "Rule 602 requires each witness to have personal knowledge on the matters as to which he is to testify, meaning essentially firsthand observations and experience" and that a "witness should not be allowed to testify on matters with which he has no familiarity").

The State contends that Trooper Jurca properly used State's Exhibit 13 to refresh his recollection pursuant to W.R.E. 612. This contention is without merit. Trooper Jurca did not have any knowledge of Colorado medical marijuana law he could refresh-he simply read the document the State provided to him.

Mr. Dixon admitted he lied when he told Trooper Jurca he was not erratically driving and when he told Trooper Jurca he was knowingly transporting drugs to Libby, Montana, inter alia .