# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 15

OCTOBER TERM, A.D. 2025

January 26, 2026

MATHEW JUDD TITMUS,

Appellant
(Defendant),

v.

S-25-0197

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable James C. Kaste, Judge*

*Representing Appellant:*

Brandon T. Booth, State Public Defender, Kirk A. Morgan, Chief Appellate Counsel, Jeremy Meerkreebs, Senior Assistant Appellate Counsel.

*Representing Appellees:*

Keith G. Kautz, Attorney General, Jenny L. Craig, Deputy Attorney General, Kristen R. Jones, Senior Assistant Attorney General, Kristine D. Rude, Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Chief Justice.**

[¶1]    Mathew Judd Titmus challenges his conviction for felony theft. He claims the district court erred when it ruled that foundation had not been laid for a defense exhibit, which then forced Mr. Titmus to testify to establish that foundation. We find no abuse of discretion and affirm.

*ISSUE*

[¶2]    This appeal presents the single question of whether the district court abused its discretion in ruling on the foundation required for an exhibit.

*FACTS*

[¶3]    In October 2023, John Ricky Rosser learned that the fence surrounding his business yard had been cut, the lock on his gate had been removed, and a skid steer tractor he owned was missing. The tractor was distinctive because of its orange and yellow coloring, and because of a custom hydraulic scale system Mr. Rosser had installed in it. Based on the work Mr. Rosser had done on the tractor since he purchased it in 2007, he estimated that its value when it was stolen was approximately $15,000 to $16,000.

[¶4]    In February 2024, Sergeant Jarrod Asay of the Uinta County Sheriff's Office went to Mr. Titmus' scrapyard hoping to speak with Cody Hartley, who sometimes worked for Mr. Titmus. Sergeant Asay was familiar with Mr. Rosser's stolen tractor because Sergeant Asay's mother is Mr. Rosser's long-time domestic partner, and Sergeant Asay had personally used the tractor. As Sergeant Asay arrived, he noticed a skid steer tractor in the yard that looked familiar and that he felt certain was Mr. Rosser's.

[¶5]    After speaking with Mr. Titmus about Cody Hartley's whereabouts, Sergeant Asay asked him about the skid steer tractor and informed him that it matched the description of one that had been reported stolen. Sergeant Asay requested permission to check the tractor's serial number, and Mr. Titmus agreed. In examining the tractor, Sergeant Asay discovered that the serial number plate had been removed, that the ignition had been tampered with, and that the tractor had been recently spray-painted black. He could smell fresh paint, the paint was still shiny, and the tractor's original orange paint still showed in places. He found a can of black spray paint in the cab, and another officer who had joined him found one outside the tractor. Sergeant Asay was finally able to locate a serial number on the tractor's engine and verified that the tractor was the one stolen from Mr. Rosser.

[¶6]    When Sergeant Asay asked Mr. Titmus about the tractor, Mr. Titmus claimed that it was one his uncle had left him when he died several years earlier, and he maintained that it had always been painted black. In the approximately one hour that Sergeant Asay

spent at Mr. Titmus' scrapyard, inspecting the tractor and talking with Mr. Titmus, Mr. Titmus offered no explanation for the tractor's presence other than his claim that his uncle left it to him.

[¶7]  The State charged Mr. Titmus with felony theft. At trial, Mr. Titmus' defense was that he owned two skid steer tractors, one he inherited from his uncle and the other he purchased in trade for work on a pickup truck along with a small amount of cash. He claimed that he had confused the two when Sergeant Asay questioned him and that he had no knowledge that the tractor he purchased was stolen. Mr. Titmus called three witnesses to support his defense.

[¶8]  One witness, Stephen King, testified that in late 2023 or early 2024, he was approached at the truck shop where he works by a man named Franco, who needed work done on his pickup truck. Because Mr. King's shop works only on large commercial trucks, Mr. King called Mr. Titmus to see if he could help. When Mr. Titmus arrived, Mr. King pointed him in the direction of Franco.

[¶9]  Another witness, Mandy Nieves, testified that she is Mr. Titmus' next-door neighbor and that she knew of and had driven the skid steer tractor that Mr. Titmus' uncle left him. She further testified that she knew of a skid steer tractor Mr. Titmus had purchased more recently from a man who introduced himself to her as Franco, and she knew Mr. Titmus had done some work for him and given him a little bit of money for the tractor.

[¶10]  The other witness, Kyle Hartley, testified that he had known Mr. Titmus his entire life, and knew of and had driven the skid steer tractor Mr. Titmus' uncle left him. He also testified that he sometimes works for Mr. Titmus and that in late 2023 or early 2024, he helped him put a new engine in a pickup owned by a man named Franco. Mr. Hartley testified that he knew of the financial arrangement between Mr. Titmus and Franco, and that Franco was to give Mr. Titmus a skid steer tractor in exchange for Mr. Titmus' work on Franco's truck and $2,000. After this testimony, the following exchange took place between defense counsel and Mr. Hartley:

> Q.   I'm going to hand you a wrinkled document.
>
> A.   Right.
>
> Q.   Have you seen that before?
>
> A.   Yeah.
>
> Q.   Could you tell me what it is?

A.    It's the bill of sale that Matt and Franco wrote up.

Q.    Okay. Who wrote it up, do you remember?

A.    It looks like it's printed.

Q.    Okay.

A.    I can't remember.

Q.    Do you remember who brought it?

A.    No. Matt had the paper, I thought, or something.

Q.    Okay.

A.    And then they obviously both kind of wrote it up.

Q.    Apparently, Franco's name was Lopez?

A.    Apparently.

Q.    Okay. And did you watch them sign that?

A.    Yeah, I watched them. They were writing anyway. I don't know what they were doing.

Q.    Okay. But you saw the document?

A.    Yeah.

Q.    Is it an accurate representation of what you saw them sign?

A.    Yep. Same one.

[¶11]  Defense counsel moved for admission of the document, and the State objected on foundation grounds. The district court examined the document, confirmed Mr. Hartley's recollection that he saw both Mr. Titmus and Mr. Lopez sign the document, and noted, based on the court's examination, that the document had not been signed by Mr. Titmus.

The court then ruled:

> So, nobody who purportedly wrote on that document has testified establishing to the Court's satisfaction that that document is what it purports to be. So, I'm going to sustain the objection as to foundation at this time. If you have another witness who can establish appropriate foundation for that exhibit, I'll reconsider whether it should be admitted at that time.

[¶12]  After further argument by defense counsel, the district court added:

> I've ruled. And so, if there's another witness that can provide foundation that is sufficient to authenticate this document, I don't think this witness is it. He didn't even write on it. He didn't sign it. He isn't purportedly one of the parties to it. There's no date on it. It's unsigned by one of the purported signatories. I want to hear from Mr. Titmus or Mr. Lopez or somebody else who has more information that demonstrates that this is a properly authenticated document. I'm sorry. My ruling stands.

[¶13]  Given the district court's ruling, Mr. Titmus, who had previously informed the court he would not testify, changed his mind and informed the court he would testify for the limited purpose of providing foundation for the purported bill of sale. Mr. Titmus testified that he recognized the document as the bill of sale for the skid steer tractor. He further testified that he did not write on the document at all because his "penmanship is terrible," and he did not sign it because he was the buyer and did not believe his signature was necessary. The court admitted the bill of sale into evidence, and the State did not cross-examine Mr. Titmus.

[¶14]  The jury found Mr. Titmus guilty of felony theft, and the district court sentenced him to a prison term of three to six years. Mr. Titmus timely appealed to this Court.

### STANDARD OF REVIEW

[¶15]  Mr. Titmus challenges the district court's ruling that Kyle Hartley's testimony did not establish foundation for the document purporting to be a bill of sale for the skid steer tractor. We review evidentiary rulings for an abuse of discretion. *Testerman v. State*, 2025 WY 58, ¶ 27, 568 P.3d 1206, 1215 (Wyo. 2025) (citing *Baker v. State*, 2022 WY 106, ¶ 12, 516 P.3d 479, 481 (Wyo. 2022)). "An abuse of discretion occurs when the deciding court could not have reasonably concluded as it did." *Testerman*, 2025 WY 58, ¶ 27, 568 P.3d at 1215. "A trial court's rulings on the admissibility of evidence are

4

entitled to considerable deference, and as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Id*. (quoting *Baker*, 2022 WY 106, ¶ 12, 568 P.3d at 482). "If we find the evidence was admitted in error, we then consider whether the error was prejudicial." *Testerman*, 2025 WY 58, ¶ 27, 568 P.3d at 1215. (citing *Dixon v. State*, 2019 WY 37, ¶ 37, 438 P.3d 216, 231 (Wyo. 2019)).

## *DISCUSSION*

[¶16] Mr. Titmus contends that the district court erred in sustaining the State's objection when he first sought admission of the document purporting to be a bill of sale for the stolen skid steer tractor through Kyle Hartley's testimony. He claims he was prejudiced by that decision because he then had to testify to establish foundation for the document's admission. We find no abuse of discretion in the trial court's ruling.

[¶17] "Generally, all relevant evidence is admissible. As part of the relevancy determination, [W.R.E.] 901 requires the authentication or identification of physical evidence before the evidence is admissible." *Pool v. State*, 2001 WY 8, ¶ 14, 17 P.3d 1285, 1289–90 (Wyo. 2001) (quoting *Rosenbaum v. State*, 915 P.2d 1200, 1201–03 (Wyo. 1996)) (citations omitted). Pursuant to Rule 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." W.R.E. 901(a) (2025). Rule 901(b) illustrates ways in which evidence may be authenticated, including the testimony of a person with knowledge "that a matter is what it is claimed to be[.]" W.R.E. 901(b)(1). "The burden to show authentication is not a heavy one." *Paden v. Paden*, 2017 WY 118, ¶ 23, 403 P.3d 135, 142 (Wyo. 2017) (quoting *Taul v. State*, 862 P.2d 649, 657 (Wyo. 1993)); *see also Westwood v. State*, 693 P.2d 763, 767 (Wyo. 1985) ("A proper interpretation of the provisions of Rule 901, W.R.E., with respect to authentication should preserve the bias in favor of admissibility[.]").

[¶18] Mr. Titmus contends the district court abused its discretion because it wrongly required a party to the bill of sale to authenticate it. In support he points to our own rules of evidence as well as an Eighth Circuit decision in which that court reversed a lower court's ruling excluding a contract where a signatory to it did not authenticate it, stating:

> The government contends that Statten was not a party or a signatory to the document or witness to its preparation. The question of authenticity here, however, is *not* whether the contract was an authentic *contract* between Jackson and Long but whether it reasonably could be the document which Statten claims she saw and read at the airport.

*United States v. Long*, 857 F.2d 436, 442 (8th Cir. 1988).

5

[¶19] Mr. Titmus is correct that a document's authentication does not necessarily depend on the testimony of a signatory or subscriber to that document. *See* W.R.E. 903 ("The testimony of a subscribing witness is not necessary to authenticate a writing unless required by the laws of the jurisdiction whose laws govern the validity of the writing."). However, the present case is distinguishable from *Long* and cases like it.

[¶20] In this case, Mr. Hartley testified that he recognized the document presented to him as the bill of sale Mr. Titmus and Mr. Lopez exchanged in his presence. He also testified, however, that both individuals signed or, at the very least, wrote on the document. But the evidence was clear that the document Mr. Titmus attempted to introduce through Mr. Hartley was not signed or even written on by Mr. Titmus. In other words, Mr. Hartley described one document, but the document the defense attempted to authenticate through his testimony did not match that description.

[¶21] The discrepancy between the document Mr. Hartley described and the document the defense attempted to authenticate through Mr. Hartley undermined Mr. Hartley's testimony that the document was what it claimed to be. Under these circumstances, we find no abuse of discretion in the district court's ruling that Mr. Hartley's testimony did not lay foundation for the evidence. Because we find no abuse of discretion, we need not consider whether Mr. Titmus was prejudiced by being required to testify to provide foundation for the defense exhibit. *See Testerman*, 2025 WY 58, ¶ 34, 568 P.3d at 1216 ("Finding no error, we do not need to consider whether Mr. Testerman was materially prejudiced by the admission of either of these statements.").

[¶22] Affirmed.